## ETTER *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

[No. 21,143.  Filed January 26, 1909.]

1. APPEAL.— *Constitutional Law.— Avoidance of Decision On.*— Where a case may be otherwise disposed of, questions of constitutional law will not be determined.  p. 586.
2. RAILROADS.— *Discriminations.— "Commutation" Tickets.—Statutes.*—Under §5405o Burns 1905, Acts 1905, p. 83, §14, providing that nothing therein shall prevent railroad companies from issuing "commutation passenger tickets," a railroad company may lawfully sell a "two-trip" ticket valid between Crawfordsville and Indianapolis, though such company charges more for tickets from intermediate points, and such sale does not constitute an unlawful discrimination.  p. 586.
3. WORDS AND PHRASES.— *"Commutation Passenger Tickets."— Railroads.*—The words "commutation passenger tickets," as used in §5405o Burns 1905, Acts 1905, p. 83, §14, import tickets entitling the holder to repeated trips at a reduced rate.  p. 587.
4. RAILROADS. — *Tickets. — "Commutation."— "Two-Trip."*— "Two-trip" tickets, entitling two persons to ride either way between two stations, or one person to ride both ways, or twice one way, are "commutation" tickets within §5405o Burns 1905, Acts 1905, p. 83, §14, providing that railroad companies may sell such tickets without being liable for discrimination.  p. 588.

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Jacob R. Etter against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*Clodfelter & Fine,* for appellant.

*L. J. Hackney, Schuyler C. Kennedy* and *Crane & McCabe,* for appellee.

JORDAN, C. J.—This action was instituted by appellant on December 22, 1905, to recover the penalty provided by section sixteen of an act of the General Assembly ''providing for the creation of a railroad commission,'' approved Feb-

ruary 28, 1905 (Acts 1905, p. 83, §5546 Burns 1908). Appellee demurred to the complaint for insufficiency of facts. This demurrer was sustained and judgment rendered by the court against appellant on the demurrer. He appeals, and assigns as error that the court erred in sustaining the demurrer to his complaint.

The complaint alleges the following facts: Appellee is a duly incorporated railroad company, engaged as a common carrier in the transportation of passengers and freight. For more than five years it has been the owner and operator of a railroad line which extends from the city of Indianapolis, Indiana, to the city of Peoria, Illinois. The city of Crawfordsville, Montgomery county, Indiana, is a regular station on appellee's line of railway, at which passengers are received and discharged from passenger-trains operated by appellee over its said line of railway. There are two other stations on said line east of Crawfordsville at which passengers are also received and discharged, viz., Linnsburg and New Ross. The latter town, it is averred, is eleven miles distant from Crawfordsville, being eleven miles nearer to the city of Indianapolis than is the city of Crawfordsville. Between these latter cities there has been constructed and is in operation an interurban electric railroad, also alleged to be a common carrier, and over which a number of cars are run each day at certain intervals from the city of Crawfordsville to the city of Indianapolis for the transportation of passengers. The rate for transporting passengers over this road from the city of Crawfordsville to the city of Indianapolis is seventy-five cents for each passenger one way and $1.40 for a round-trip ticket. Before this interurban line commenced to carry passengers from Crawfordsville to Indianapolis at said rate, appellee charged each passenger carried over its road from Crawfordsville to Indianapolis $1.30 for a single trip ticket, or $2.35 for a round-trip ticket. After said traction company commenced to carry passengers over its road be-

tween the aforesaid cities at the rates before mentioned, appellee issued certain passenger tickets and sold them at its station at Crawfordsville, and at no other stations on its said road east or west of said city of Crawfordsville, except the city of Indianapolis. These tickets were sold to all persons applying for them at said station of Crawfordsville at the rate of $1.40, and were received and accepted by appellee company for passage one way over its road from Crawfordsville to Indianapolis for two passengers, or for a round-trip between said stations for one passenger. The tickets were generally known as "two-trip tickets," and were placed on sale by appellee at said station at Crawfordsville for the general use of all persons desiring to purchase them. These tickets were issued and sold by appellee at said station of Crawfordsville for the purpose of competing with said interurban electric line of railway in the transportation of passengers between Crawfordsville and Indianapolis. The tickets so issued and sold by appellee consisted of two parts, attached to each other, and are as follows:

"Issued by Cleveland, Cincinnati, Chicago & St. Louis Railway Company.
The Big Four Route.
Good for one continuous passage in either direction between Crawfordsville, Indiana, and Indianapolis, Indiana.
Void after thirty days from date of sale as stamped on back.
Form 2 T.                              H. J. Mein, G. P. A.

Issued by Cleveland, Cincinnati, Chicago & St. Louis Railway Company.
The Big Four Route.
Good for one continuous passage in either direction between Crawfordsville, Indiana, and Indianapolis, Indiana.
Void after thirty days from date of sale as stamped on back.
Form 2 T.                              H. J. Mein, G. P. A."

By means of these tickets a passenger thereby secured. a cheaper rate per mile from Crawfordsville to Indianapolis than was the rate per mile to Indianapolis from any of the stations on appellee's line west of the city of Crawfordsville. Appellant is a physician, engaged in the general practice of his profession, and on November 22, 1905, .he was in said town of New Ross, and was required to go from said town to Indianapolis on professional business. He applied to appellee's ticket agent at said station of New Ross for a ticket from that station to Indianapolis over appellee's road. In order to secure said ticket he was compelled to and did pay therefor the price of $1, which amount was the regular fare one way from said station to Indianapolis, although the town of New Ross is eleven miles nearer Indianapolis than is the city of Crawfordsville. Wherefore the plaintiff demands judgment for $500.

Counsel for appellant insist that, by the sale of the railroad tickets before described, appellee was guilty of an unjust discrimination, and thereby violated the provisions of section fourteen of the railroad commission act (Acts 1905, p. 83, §5405o Burns 1905). Or, in other words, they contend that "by placing on sale at Crawfordsville and Indianapolis a certain kind of passenger ticket for the use of the general public, and at the same time requiring the general public at all intermediate stations to pay the old price —almost twice as much per mile—appellee was not only guilty of palpable discrimination against localities, but was also guilty of discrimination against every person who was compelled to pay the higher rate. They further insist that "the sale of these cheap tickets only at Crawfordsville and Indianapolis induced people at intermediate stations along the line to buy a one-way ticket from the home station to Crawfordsville, although the latter town was further away from Indianapolis than the home station, in order to get the benefit of this low rate to the capital city."

Section 5546, *supra,* provides: "In case any railroad com-

pany subject to this act shall do, cause to be done, or permit to be done, any matter, act or thing in this act prohibited, or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad company shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violations, and in case said railroad company shall be guilty of extortion or discrimination as by this act defined, then in addition to such damages, such railroad company shall pay to the person, firm or corporation injured thereby a penalty of not less than $100 nor more than $500, to be recovered by civil action in any court of competent jurisdiction in any county into or through which such railroad may run.''

The insistence of counsel for appellee is that the lower court did not err in sustaining the demurrer to the complaint for the reason that §5546, *supra,* as well as the act generally, is unconstitutional by reason of the limitation contained in §5405v Burns 1905, Acts 1905, p. 83, which reads as follows: ''Provided, that this act shall not apply to street or interurban railroads, except as section three substitutes the railroad commission, created hereby for the Auditor of State, in respect to duties pertaining to the construction and maintenance of interlocking works at crossings of railroads and railroads operated by electricity.'' It is argued that excepting interurban railroads from the application of the statute renders it antagonistic to the Constitution of Indiana and also the 14th Amendment of the federal Constitution, for the reason that the statute is thereby made to discriminate against steam railroad companies, and denies to appellee company equal protection of the law. It is claimed that it places a burden upon appellee and other railroad companies of like character that it does not place upon other corporations similarly situated. Or, in other words, it is asserted that the principal question is this: ''While there is a difference between a railroad operated by

steam and one operated by electricity, is the difference such as is proper to impose a penalty on the steam railroad companies for acts prohibited by the statute in question and not proper to impose a penalty on interurban railroad companies?"

As a second reason for justifying the ruling of the lower court in sustaining the demurrer to the complaint, counsel assert that the railroad passenger tickets in question are "commutation tickets," which are expressly excepted from the prohibitions of the act of 1905, *supra*, and therefore the complaint must be held insufficient to entitle appellant to recover the penalty provided by §5546, *supra*. In this appeal we have to deal exclusively with the provisions of the act of 1905, *supra*, and are not concerned with the provisions of the amendatory act of 1907 (Acts 1907, p. 454). If the complaint in this case is insufficient on demurrer because of the second reason advanced by appellee's counsel, then, under a well-settled rule, we will not consider or determine the constitutional question raised. Turning to section fourteen of said act of 1905 (§5405o, *supra*), we find that this section, after dealing with the question of special rates, rebates, charges, etc., on the part of the railroad companies, and providing what shall constitute an unjust discrimination, further provides, by subdivision e, "that nothing in this act shall prevent * * * the issuance of mileage, excursion, or commutation passenger tickets."

It is evident that the legislature, by passing the statute of 1905, *supra*, did not intend thereby to break down or stifle all competition in passenger business on the part of railroad companies. This view is supported by *Interstate Commerce Com.* v. *Baltimore, etc., R. Co.* (1890), 43 Fed. 37; same case on appeal, *Interstate Commerce Com.* v. *Baltimore, etc., R. Co.* (1892), 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699. In these decisions party-rate tickets, under the interstate commerce act, were involved, and were sustained.

Etter *v.* Cleveland, etc., R. Co.—171 Ind. 581.

These tickets were ''each good for a party of ten persons at the rate of two cents per mile per capita, while single passengers were charged three cents per mile.'' It was held in the cases cited that the tickets neither constituted an unjust discrimination nor an undue or unreasonable preference or advantage within the purview of the interstate commerce act, in case such party-rate tickets were offered to the public generally, and it did appear that the rate charged a single passenger was not unreasonable.

Under the alleged facts, the right of appellee, by means of selling and furnishing the tickets in question, to compete with the interurban electric railroad company, mentioned in the complaint, for passenger business between the stations of Crawfordsville and Indianapolis is neither expressly nor impliedly denied by the statute. These tickets, as it appears, were sold at a reduced rate of $1.40 apiece. They were in two parts, and were good either for a round-trip passage for one person between the stations of Crawfordsville and Indianapolis, or were good for the passage of two persons one way between said stations. It was stipulated in each part of the ticket that it was to be void after thirty days from date of sale. The tickets were sold by appellee to all persons who desired them, upon the payment of $1.40. Or, in other words, their sale was open to all persons applying therefor, without discrimination, upon the same terms, conditions and circumstances. By employing the term ''commutation passenger tickets,'' in §5405o, *supra,* the legislature certainly used the term with the meaning as usually

3. understood or accorded to it by leading authorities on the definition of terms or words. Commutation, as applied to railroad tickets, is defined by the Standard Dictionary to be ''a railway or other ticket entitling the holder to repeated passage or other service, etc., at a reduced rate; a season ticket.'' The Century Dictionary has the following definition: ''A ticket issued at a reduced rate by a carrier of passengers, entitling the holder to be carried over a given

route a limited number of times, or an unlimited number during a certain period." In 8 Cyc., 398, a "commutation ticket" is defined to be "a ticket, as for transportation, which is the evidence of a contract for service at a reduced rate; a ticket for one passenger, good for more than one ride, or for more than one passenger for one ride, sold at reduced rate; a ticket issued at reduced rate by a carrier of passengers, entitling the holder to be carried over a given route a limited number of times, or an unlimited number of times during a certain period; the purchase of a right to go upon a certain route during a specified period for a less amount than would be paid in the aggregate for separate trips." See, also, *Interstate Commerce Com.* v. *Baltimore, etc., R. Co.* (1890), 43 Fed. 37; *Interstate Commerce Com.* v. *Baltimore, etc., R. Co.* (1892), 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699. In the case last cited, the United States Supreme Court, in affirming the decision of the circuit court, quoted with approval the following from the concurring opinion of Judge Sage therein: " 'The difference between commutation and party-rate tickets is, that commutation tickets are issued to induce people to travel more frequently, and party-rate tickets are issued to induce more people to travel. There is, however, no difference in principle between them, the object in both cases being to increase travel without unjust discrimination, and to secure patronage that would not otherwise be secured.' "

As the tickets here involved, under the definition and holding of the authorities to which we have referred, fall within the class known and denominated as "commutation tickets," and as by §5405o, *supra*, the issuance of such tickets is expressly excepted from the prohibitions of our railroad commission act, it must follow that appellant is not entitled to recover the penalty prescribed by §5546, *supra*, and the demurrer to the complaint was properly sustained.

While we place our holding upon the fact that the tickets

Cleveland, etc., R. Co. *v.* Lynn—171 Ind. 589.

in question were excepted from the provisions of the statute, nevertheless we are not to be understood as impliedly holding that, in the absence of the exception in the act, the tickets, under the facts, would come within the inhibition of the statute.

Judgment affirmed.